IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

EMANUEL CROOM,

    PLAINTIFF,

VS.                                                                                  CV NO.:

ARD LOGISTICS-ALABAMA LLC,

    DEFENDANT.                                      JURY TRIAL DEMANDED

COMPLAINT

## I. JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, *et. seq.* ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Act and for injunctive relief and damages.

## II.    PARTIES

2.    Plaintiff, Emanuel Croom, (hereinafter "Plaintiff") is a resident of Tuscaloosa, Tuscaloosa County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this

case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Western Division.

3. Defendant ARD Logistics-Alabama LLC (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

### III.   STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

5. Defendant hired Plaintiff on or about January 28, 2015.

6. Defendant employed Plaintiff in various positions, including Supervisor and Team Leader.

7. Defendant employed Plaintiff in a full-time capacity such that he worked more than 40 hours per week during most every workweek.

8. On May 6, 2020, Defendant employed Plaintiff in a Supervisor position.

9. Plaintiff sought FMLA leave on May 7, 2020.

10. On May 8, 2020, Defendant confirmed Plaintiff was eligible for FMLA leave.

11. Plaintiff's physician certified his need for FMLA leave on or about May 18, 2020.

12. Plaintiff's physician determined Plaintiff's condition was episodic and resulted in flare-ups that caused him to suffer shortness of breath, coughing, chest pains, and wheezing.

13. Plaintiff's physician determined that Plaintiff's condition necessitated absences from work during such flare-ups.

14. Plaintiff exercised extended FMLA leave from May 13, 2020 through June 1, 2020.

15. Defendant employed Myron Smith.

16. On June 3, 2020, Smith called Plaintiff to his office and informed Plaintiff he had two options: (1) step down as a supervisor and become a team leader; or (2) be terminated.

17. Smith did not inform Plaintiff of the reason for the choice of demotion or termination.

18. On June 4, 2020, Plaintiff suffered raised blood pressure and exercised one day of FMLA leave.

19. On June 5, 2020, Plaintiff became a team leader.

20. On September 14, 2020, Plaintiff left work early due to an illness.

21. Plaintiff's symptoms were respiratory such that he was concerned he may have contracted the COVID-19 virus.

22. Plaintiff was absent from work on September 15, 2020.

23. Plaintiff was absent from work on September 16, 2020.

24. On September 16, 2020, Plaintiff sought treatment from his physician.

25. Plaintiff's physician prescribed various medications to treat his symptoms with a regimen that was to last for thirty days for one medication and ninety days for two other medications.

26. Plaintiff's physician stated Plaintiff could return to work on September 18, 2020.

27. Plaintiff was absent from work on September 17, 2020.

28. On September 17, 2020, Plaintiff telephoned Defendant's Human Resource Department and spoke with LaMarcus Jones.

29. On September 18, 2020, Plaintiff still did not feel well, and he reported his absence pursuant to Defendant's absence reporting procedure.

30. Defendant did not schedule Plaintiff to work on September 19, 2020.

31. Defendant did not schedule Plaintiff to work on September 20, 2020.

32. On the morning of September 21, 2020, prior to his shift, Plaintiff spoke with Dennis about Powell's hostility towards Plaintiff's health issues, his telephone call with Jones regarding the use of FMLA leave, and the decision to demote him during June 2020.

33. On September 21, 2020, Plaintiff worked his regularly scheduled 6:15 p.m. shift that was scheduled to end on September 22, 2020 at 5:00 a.m.

34. After the conclusion of Plaintiff's September 21-22, 2020 shift, Defendant terminated Plaintiff's employment.

35. As of the date of Plaintiff's termination, Plaintiff held the position of Team Leader.

36. Defendant terminated Plaintiff's employment for the stated reason of "failure to follow process," wherein the alleged error resulted in a $15,000 loss to Defendant.

37. Defendant employed Danielle Ireland.

38. Defendant employed Joe Milligan.

39. Upon information and belief, Powell supervised Ireland and Milligan.

40. Upon information and belief, Ireland and Milligan engaged in a process error that resulted in Defendant's main customer, Mercedes Benz, shutting down its production line for approximately forty-five minutes.

41. Powell did not terminate Ireland for this error.

42. Powell did not terminate Milligan for this error.

43. Defendant employed James Pittman.

44. Upon information and belief, Powell supervised Pittman.

45. Upon information and belief, Pittman engaged in a process error that resulted Defendant's main customer, Mercedes Benz, shutting down its production line for approximately five or more minutes.

46. Powell did not terminate Pittman for this error.

47. Defendant and Mercedes Benz have entered a contract wherein any errors caused by Defendant resulting in a shutdown of Mercedes Benz's production line, Defendant shall be fined $10,000 for each minute the production line is shut down.

### IV. COUNT ONE - FMLA INTERFERENCE

48. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 47 above as if fully set forth herein.

49. During the 12-month period prior to September 14, 2020, Defendant employed Plaintiff for at least 1,250 hours of service.

50. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's September 14, 2020, leave.

51. During the week of September 14, 2020, Defendant employed fifty or more employees that worked within 75 miles of the location where Plaintiff worked.

52. Plaintiff sought FMLA leave on May 7, 2020.

53. On May 8, 2020, Defendant confirmed Plaintiff was eligible for FMLA leave.

54. Plaintiff's physician certified his need for FMLA leave on or about May 18, 2020.

55. Plaintiff's physician determined Plaintiff's condition was episodic and resulted in flare-ups that caused him to suffer shortness of breath, coughing, chest pains, and wheezing.

56. Plaintiff's physician determined that Plaintiff's condition necessitated absences from work during such flare-ups.

57. Plaintiff exercised extended FMLA leave from May 13, 2020 through June 1, 2020.

58. Defendant employed Myron Smith.

59. On June 3, 2020, Smith called Plaintiff to his office and informed Plaintiff he had two options: (1) step down as a supervisor and become a team leader; or (2) be terminated.

60. Smith did not inform Plaintiff of the reason for the choice of demotion or termination.

61. On June 4, 2020, Plaintiff suffered raised blood pressure and exercised one day of FMLA leave.

62. On June 5, 2020, Plaintiff became a team leader.

63. On September 14, 2020, Plaintiff left work early due to an illness.

64. Plaintiff's symptoms were respiratory such that he was concerned he may have contracted the COVID-19 virus.

65. Plaintiff was absent from work on September 15, 2020.

66. Plaintiff was absent from work on September 16, 2020.

67. On September 16, 2020, Plaintiff sought treatment from his physician.

68. Plaintiff's physician prescribed various medications to treat his symptoms with a regimen that was to last for thirty days for one medication and ninety days for two other medications.

69. Plaintiff's physician stated Plaintiff could return to work on September 18, 2020.

70. Plaintiff was absent from work on September 17, 2020.

71. On September 17, 2020, Plaintiff telephoned Defendant's Human Resource Department and spoke with LaMarcus Jones.

72. Plaintiff provided notice of his unforeseeable need of FMLA leave to Jones and requested to use such leave or otherwise use a Paid Time Off day.

73. Jones stated that Plaintiff could use a Paid Time Off day.

74. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

75. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

76. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

77. Defendant failed to inquire if the absences were related to Plaintiff's May 2020 FMLA qualifying condition.

78. Defendant employed Rob Powell.

79. Powell's job with Defendant is Operations Manager.

80. Powell oversees Defendant's attendance system such that he grants or denies approval of absences as Paid Time Off.

81. Plaintiff entered his Paid Time Off days into Defendant's attendance system for his September 15, 16, and 17, 2020 absences.

82. Powell denied each entry for Paid Time Off days that Plaintiff attempted to use.

83. Powell telephoned Plaintiff and stated that he could not use Paid Time Off days.

84. Plaintiff responded that he had a doctor's excuse, and he was simply using the Paid Time Off days to guarantee his income, to which Powell stated that

he would not approve the Paid Time Off and that Plaintiff could come to work if he wanted to be paid.

85. Following the conversation with Powell, Plaintiff telephoned Jones to report Powell's refusal to approve absences and his hostility towards him.

86. Jones directed Plaintiff to speak with Defendant's top Human Resources employee Kokeithia Dennis.

87. On September 18, 2020, Plaintiff still did not feel well, and he reported his absence pursuant to Defendant's absence reporting procedure.

88. Defendant did not schedule Plaintiff to work on September 19, 2020.

89. Defendant did not schedule Plaintiff to work on September 20, 2020.

90. On the morning of September 21, 2020, prior to his shift, Plaintiff spoke with Dennis about Powell's hostility towards Plaintiff's health issues, his telephone call with Jones regarding the use of FMLA leave, and the decision to demote him during June 2020.

91. Dennis asked Plaintiff to send him a copy of the doctor's excuse.

92. Dennis stated that she would have someone investigate Plaintiff's complaint.

93. On September 21, 2020, Plaintiff worked his regularly scheduled 6:15 p.m. shift that was scheduled to end on September 22, 2020 at 5:00 a.m.

94. After the conclusion of Plaintiff's September 21-22, 2020 shift, Defendant terminated Plaintiff's employment.

95. Defendant's Rob Powell informed Plaintiff that Defendant terminated his employment.

96. Defendant's Rob Powell made the decision to terminate Plaintiff's employment.

97. Defendant terminated Plaintiff's employment for the stated reason of "failure to follow process," wherein the alleged error resulted in a $15,000 loss to Defendant.

98. Defendant employed Danielle Ireland.

99. Defendant employed Joe Milligan.

100. Upon information and belief, Powell supervised Ireland and Milligan.

101. Upon information and belief, Ireland and Milligan engaged in a process error that resulted in Defendant's main customer, Mercedes Benz, shutting down its production line for approximately forty-five minutes.

102. Powell did not terminate Ireland for this error.

103. Powell did not terminate Milligan for this error.

104. Upon information and belief, Ireland did not exercise FMLA rights during her employment.

105. Upon information and belief, Milligan did not exercise FMLA rights during her employment.

106. Defendant employed James Pittman.

107. Upon information and belief, Powell supervised Pittman.

108. Upon information and belief, Pittman engaged in a process error that resulted Defendant's main customer, Mercedes Benz, shutting down its production line for approximately five or more minutes.

109. Powell did not terminate Pittman for this error.

110. Upon information and belief, Pittman did not exercise FMLA rights during his employment.

111. Defendant and Mercedes Benz have entered a contract wherein any errors caused by Defendant resulting in a shutdown of Mercedes Benz's production line, Defendant shall be fined $10,000 for each minute the production line is shut down.

112. Defendant's employees, including Powell, Jones, and Dennis, had knowledge that Plaintiff suffered from an FMLA qualifying condition for which he needed treatment through his doctor from May 13 through June 1, 2020 and September 14-18, 2020.

113. Defendant interfered with Plaintiff's FMLA rights by not allowing him to designate FMLA leave form September 14, 15, 16, 17, and 18, 2020.

114. Defendant interfered with Plaintiff's FMLA rights by not allowing him to substantively return from leave.[1]

115. As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V. COUNT TWO - FMLA RETALIATION - DEMOTION

116. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 115 above as if fully set forth herein.

117. On May 6, 2020, Defendant employed Plaintiff in a Supervisor position.

118. Plaintiff sought FMLA leave on May 7, 2020.

119. During the 12-month period prior to May 7, 2020, Defendant employed Plaintiff for at least 1,250 hours of service.

120. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's May 7, 2020 request for FMLA leave.

121. During the week of May 7, 2020, Defendant employed fifty or more employees that worked within 75 miles of the location where Plaintiff worked.

---

[1] *See Hicks v. City of Tuscaloosa*, 201 U.S. Dist. LEXIS 141649 (N.D. AL 2015)("If employers are allowed to provide a mere cursory reinstatement for only a few days to comply with the law before demoting an employee returning from FMLA leave, the spirit of the law is circumvented and the protection the FMLA provides is stripped away.")

122. On May 8, 2020, Defendant confirmed Plaintiff was eligible for FMLA leave.

123. Plaintiff's physician certified his need for FMLA leave on or about May 18, 2020.

124. Plaintiff's physician determined Plaintiff's condition was episodic and resulted in flare-ups that caused him to suffer shortness of breath, coughing, chest pains, and wheezing.

125. Plaintiff's physician determined that Plaintiff's condition necessitated absences from work during such flare-ups.

126. Defendant employed Myron Smith.

127. On June 3, 2020, Smith called Plaintiff to his office and informed Plaintiff he had two options: (1) step down as a supervisor and become a team leader; or (2) be terminated.

128. Smith did not inform Plaintiff of the reason for the choice of demotion or termination.

129. On June 5, 2020, Plaintiff became a team leader.

130. As a result of Defendant's retaliatory demotion decision in violation of the FMLA, Plaintiff has been damaged, suffering a reduction in pay from on or about June 5, 2020 through September 21, 2020 and benefits related to that compensation.

## VI. COUNT THREE – FMLA INTERFERENCE – DEMOTION

131. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 130 above as if fully set forth herein.

132. Plaintiff re-alleges Paragraphs 117-129 above as if fully set forth herein

133. As a result of Defendant's decision to demote Plaintiff, Defendant interfered with Plaintiff's right to be restored to an equivalent position with the same privileges, perquisites, and status he held as a Supervisor, as the team leader job did not involve the same or substantially similar duties and responsibilities, effort, responsibility, and authority or pay.

134. As a result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has been damaged, suffering a reduction in pay from on or about June 5, 2020 through September 21, 2020 and benefits related to that compensation.

## VII. COUNT FOUR - FMLA RETALIATION

135. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 113 above as if fully set forth herein.

136. Defendant terminated Plaintiff's employment for the stated reason of "failure to follow process," wherein the alleged error resulted in a $15,000 loss to Defendant.

137. Defendant's Rob Powell informed Plaintiff that Defendant terminated his employment.

138. Defendant's Rob Powell made the decision to terminate Plaintiff's employment.

139. Defendant employed Danielle Ireland.

140. Defendant employed Joe Milligan.

141. Upon information and belief, Powell supervised Ireland and Milligan.

142. Upon information and belief, Ireland and Milligan engaged in a process error that resulted in Defendant's main customer, Mercedes Benz, shutting down its production line for approximately forty-five minutes.

143. Powell did not terminate Ireland for this error.

144. Powell did not terminate Milligan for this error.

145. Upon information and belief, Ireland did not exercise FMLA rights during her employment.

146. Upon information and belief, Milligan did not exercise FMLA rights during her employment.

147. Defendant employed James Pittman.

148. Upon information and belief, Powell supervised Pittman.

149. Upon information and belief, Pittman engaged in a process error that resulted Defendant's main customer, Mercedes Benz, shutting down its production line for approximately five or more minutes.

150. Powell did not terminate Pittman for this error.

151. Upon information and belief, Pittman did not exercise FMLA rights during his employment.

152. Defendant and Mercedes Benz have entered a contract wherein any errors caused by Defendant resulting in a shutdown of Mercedes Benz's production line, Defendant shall be fined $10,000 for each minute the production line is shut down.

153. Defendant's Rob Powell made the decision to terminate Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

154. As a result of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits from September 21, 2020 to the present.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

C.   Award him back pay, together with employment benefits, front pay, liquidated damages; special damages; nominal damages;

D.   Attorneys' fees and costs;

E.   Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 2601 *et seq.* that the actions of Defendant violated the law; and,

F.   Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

**OF COUNSEL**:
ALLEN D. ARNOLD, Attorney at Law
A Member of The Five Points Law Group, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, AL 35205
T: (205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
ARD Logistics-Alabama LLC
c/o Robbie Wicks
10093 Brose Drive
Vance, AL 35490